**UNITED STATE BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

In re: Court File No. 16-43707 (WJF)

Barbara A. Wigley,

Debtor. Chapter 11

---

Barbara A. Wigley, Adv. No. 20-04101

Plaintiff,

v.

Lariat Companies, Inc.,

Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

---

The above-entitled adversary proceeding was commenced on July 28, 2020. Plaintiff Barbara A. Wigley ("Ms. Wigley") sought: (1) to enjoin collection efforts by Defendant Lariat Companies, Inc. ("Lariat"); (2) declaratory relief regarding interpretation of Ms. Wigley's Chapter 11 plan; and (3) the application of payments made by Ms. Wigley and her spouse, Michael Wigley ("Mr. Wigley") (collectively "the Wigleys") to Ms. Wigley's indebtedness to Lariat. Dkt. No. 1. On August 26, 2020, Lariat moved for dismissal of the adversary proceeding under Fed. R. Civ. P. 12(b)(1) and (b)(6) (made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012) and mandatory or discretionary abstention under 28 U.S.C. § 1334(c). Dkt. No. 6.

A hearing was held on the motion to dismiss on September 15, 2020. John D. Lamey, III appeared on behalf of Ms. Wigley. George E. Warner, Jr. appeared on behalf of Lariat. The parties were permitted to supplement the record following the hearing. Lariat filed documents on

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on 12/30/2020
Lori Vosejpka, Clerk, by WM

September 17, 2020. Dkt. No. 12. Ms. Wigley filed documents on September 24, 2020. Dkt. No. 13. The matter was taken under advisement at that time. While the matter was under advisement, Lariat filed an additional supplement on December 15, 2020 regarding decisions rendered in the Minnesota court actions. On December 20, 2020, Ms. Wigley filed a request to dismiss the case solely on Lariat's alternative ground of mandatory abstention. On December 21, 2020, Lariat opposed such relief.

Based on the pleadings, the file, and the record of the proceedings herein, the Court grants the motion to dismiss for the reasons stated below.

## **BACKGROUND**

The facts of the dispute between Lariat and Ms. Wigley have been set forth in opinions of this Court, federal appellate courts, and state courts. For clarity, the Court provides a brief background to aid in the analysis below.

The dispute between the Wigleys and Lariat began in 2010 when a restaurant owned by an entity controlled by Mr. Wigley defaulted on its 10-year lease of commercial property owned by Lariat. As a result, Lariat received a judgment against Mr. Wigley for $2,238,064.00 based on his guaranty of the lease obligations. In 2013, a Minnesota state court held Ms. Wigley jointly and severally liable for a fraudulent transfer of Mr. Wigley's assets to Ms. Wigley, resulting in a fraudulent transfer judgment of $788,487.78. In 2014, Mr. Wigley filed for bankruptcy. Lariat filed an amended claim of $1,610,787.00 in Mr. Wigley's bankruptcy, but the claim was capped at $553,271.58 in accordance with 11 U.S.C. § 502(b)(6). In 2016, Mr. Wigley paid the capped amount and interest for a total of $637,581.07 and received a discharge in bankruptcy.

Following Mr. Wigley's discharge, the Wigleys sought to vacate the fraudulent transfer judgment against Ms. Wigley in state court. The Minnesota court denied the motion to vacate,

which Ms. Wigley appealed to the Minnesota Court of Appeals. That appeal was stayed pending appeals in the bankruptcy case, but on September 14, 2020, the Minnesota Court of Appeals affirmed the Minnesota court's refusal to vacate the fraudulent transfer judgment. The Minnesota Supreme Court denied Ms. Wigley's petition for review on December 15, 2020.

Ms. Wigley filed for bankruptcy relief on December 19, 2016. Lariat filed a claim in the amount of $1,030,916.74 based on the fraudulent transfer judgment and accrued interest. This Court allowed Lariat's claim in part. The allowed claim was capped at $308,805.00 (plus interest) under 11 U.S.C. § 502(b)(6). The Eighth Circuit Court of Appeals affirmed this Court's decision. Lariat Cos. v. Wigley (In re Wigley), 951 F.3d 967 (8th Cir. 2020).

Lariat also initiated an adversary proceeding to except its fraudulent transfer judgment from discharge under 11 U.S.C. § 523(a)(2)(A). This Court entered a judgment excepting the debt owed to Lariat from discharge. The Bankruptcy Appellate Panel for the Eighth Circuit affirmed this Court's decision. Lariat Cos. v. Wigley (In re Wigley), 620 B.R. 87 (B.A.P. 8th Cir. 2020). Ms. Wigley has appealed the decision to the Eighth Circuit Court of Appeals. Ms. Wigley did not seek a stay pending the appeal of the nondischargeable judgment and the Eighth Circuit appeal is in the briefing stage.

While these issues were litigated in appellate courts, Ms. Wigley's Chapter 11 plan was confirmed. Under the terms of the plan, she agreed to pay all allowed claims in full, including Lariat's claim. After the Eighth Circuit Court of Appeals determined the capped amount of Lariat's claim to be $308,805.00, Ms. Wigley paid Lariat $361,249.07 (which included interest) on March 24, 2020 in accordance with the Chapter 11 plan.

The terms of Ms. Wigley's Chapter 11 plan included the following provision:

> **Treatment of Class 1**
>
> Class 1 claims, to the extent allowed pursuant to Section 502 of the Bankruptcy Code, shall be paid in full, with post-petition interest calculated at the rate of five percent (5.0%) per annum, on the Effective Date; provided, however, that:
>
> 1) To the extent that a disputed claim is not subject to a Final Order on the Effective Date:
>
> a) The allowed claim by the bankruptcy court by order dated February 9, 2018, shall be paid in full on the Effective Date, or an appropriate, court-approved bond per the Federal Rules of Bankruptcy Procedure shall be posted and its terms followed, without prejudice to a claimant's right to receive additional payments on adjudication of the Disputed Amount;
>
> b) Any additional amount allowed by order of the Bankruptcy Court or any appellate court shall be paid in full fifteen (15) calendar days after said order, and, conversely, any reduction in the amount of the allowed claim by a federal court shall be paid back to the Debtor fifteen (15) calendar days after said order; and any reduction in the event of a reversal or modification of a Minnesota state court judgment shall be governed by Minnesota law and procedure; and
>
> c) Any Disputed Amount shall not be discharged prior to entry of a Final Order.
>
> d) With respect to the Lariat claim, Lariat is enjoined from collection activity against the Debtor unless there is a payment default to it under this Plan. If there is a payment default, Lariat shall file an affidavit with this court and the Debtor will be allowed three (3) business days to file a response.

The plan defined the "Disputed Amount" as "Lariat's claim as filed on February 20, 2017 as claim number 4, and as overruled in part by Judge Fisher's Order dated February 9, 2018." In accordance with the Eighth Circuit Court of Appeal's decision, this claim amount has been determined to be allowed in the capped principal of $308,805.00.

The Chapter 11 plan purported to retain jurisdiction over certain proceedings "[t]o the full extent permitted under applicable law, until the Plan has been fully consummated." This reservation included proceedings involving "interpretation and enforcement of the terms of the Plan." The plan also permitted a discharge "after completing all payments on account of Class 1

claims as provided in the Plan, and subject to the stated limitations on the discharge of Class 1 claims." Ms. Wigley received her discharge of all debts other than Lariat's on December 6, 2018.

In May 2020, Lariat commenced collection activity against Ms. Wigley, giving notice of an intent to levy three of Ms. Wigley's bank accounts. Ms. Wigley moved this Court in her bankruptcy case to interpret the plan in an effort to stop Lariat's collection activities. On May 19, 2020, the Court denied the motion on the basis that a request for declaratory or injunctive relief is required to be brought by adversary proceeding under the Federal Rules of Bankruptcy Procedure.

On July 17, 2020, Lariat filed a motion in the Minnesota action for application of assets to judgment and post-judgment relief. Dkt. No. 12 at 36. Lariat requested that any nonexempt assets belonging to Ms. Wigley be liquidated to satisfy its fraudulent transfer judgment. Id.

Ms. Wigley filed this adversary proceeding on July 28, 2020 seeking to enjoin Lariat's collection actions. Specifically, in count one, Ms. Wigley requested "injunctive relief enforcing the terms of the Plan, and barring Defendant from undertaking collection efforts until the pending appeals in both the state and federal courts have concluded." Dkt. No. 1 at 9. In count two, Ms. Wigley sought a declaration "that, pursuant to Section II(A)(1) of the Plan, Defendant is barred from pursuing collection efforts against Debtor until the conclusion of all pending appeals and must further abide by the interest rate established by the Plan." Id. at 10. In count three, Ms. Wigley sought a declaration that "the full amount of any payment that Mr. Wigley made pursuant to his confirmed plan shall be applied to the full liability toward satisfaction of the judgment entered in the Fraudulent Transfer Action." Id. at 11.

In the Minnesota action, Ms. Wigley opposed the motion for application of assets, arguing, among other reasons, Lariat's collection activity in May and June of 2020 and the motion violated what she claimed was the plain language of Ms. Wigley's confirmed plan. Dkt. No. 12 at 545.

Ms. Wigley argued the Minnesota court should, at a minimum, "hold its decision on the present motion in abeyance" while this Court considered the present adversary proceeding. Id. at 545–46. In her concluding arguments, Ms. Wigley argued Lariat's motion should be denied because, "It asks the Court to wholly disregard not only the plain language of a bankruptcy plan that precludes exactly the actions Lariat is undertaking here, and it also asks the Court to deliver Lariat an immediate additional windfall . . . ." Id. at 550. Ms. Wigley's counsel in the pending Minnesota action filed an affidavit stating interpretation of Ms. Wigley's plan is not an issue to be decided in the Minnesota action. Dkt. No. 13 at 2–3.

On December 15, 2020, this Court was informed by Lariat's counsel that on November 20, 2020, Minnesota District Court Judge James Moore denied Lariat's motion for application of assets to the fraudulent transfer judgment. The court held that Lariat has alternative remedies to pursue for execution of its judgment and Lariat provided no evidence that Ms. Wigley had failed to comply or interfered with the post-judgment collection process. Judge Moore also denied the motion because Lariat did not establish the present amount it is owed by Ms. Wigley.

On December 17, 2020, the Court held a status conference regarding the decision issued by Judge Moore and the Minnesota Supreme Court's denial of review on December 15, 2020 of the fraudulent transfer judgment. Neither party believed that those decisions have an impact on this adversary proceeding. On December 20, 2020, counsel for Ms. Wigley filed a partial withdrawal of its response to Lariat's motion to dismiss. Ms. Wigley agreed to dismissal but only on the grounds of mandatory abstention, Lariat's alternative argument for dismissal. Ms. Wigley chose not to utilize any of the options in Fed. R. Civ. P. 41 (made applicable to this adversary proceeding by Fed. R. Bankr. P. 7041) to seek dismissal of the adversary proceeding. On December 21, 2020, counsel for Lariat filed a response, arguing the case should be dismissed "with prejudice"

because the Court lacks subject matter jurisdiction to decide the case, implying the Court cannot abstain if it does not have subject matter jurisdiction.

## ANALYSIS

The parties appear to be in agreement that this case should be dismissed, but disagree on whether it should be dismissed because the court lacks subject matter jurisdiction as Lariat argues or because the provisions of 28 U.S.C. § 1334(c)(2) require abstention as Ms. Wigley argues. The Court concludes it does not have subject matter jurisdiction and, therefore, cannot abstain. The adversary proceeding shall be dismissed for lack of subject matter jurisdiction.

### I.     Jurisdiction

Lariat argues this Court does not have subject matter jurisdiction over this adversary proceeding under 28 U.S.C. § 1334 because the issues raised by Ms. Wigley are not issues "arising under title 11, or arising in or related to cases under title 11." Lariat also argues the reservation of jurisdiction in the plan has terminated because the plan has been fully consummated, which under the terms of the plan extinguishes jurisdiction. Ms. Wigley argues that the Court retains jurisdiction to interpret its own orders and the reservation of jurisdiction applies because the plan has not been fully consummated.

Federal Rule of Civil Procedure 12(b)(1), as made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(b), allows a defendant to challenge whether a court has subject matter jurisdiction to decide the case. A challenge to this Court's subject matter jurisdiction is a threshold matter. Godfrey v. Pulitzer Publ'g Co., 161 F.3d 1137, 1141 (8th Cir. 1998). Therefore, while Ms. Wigley has withdrawn her opposition to the motion to dismiss in part on the basis that the Court should abstain from deciding this adversary proceeding, the Court is unable to abstain unless it also has subject matter jurisdiction. See 28 U.S.C. § 1334(c)(1)–(2);

Cullen Elec. Co. v. Bill Cullen Elec. Contracting Co. (In re Bill Cullen Elec. Contracting Co.), 160 B.R. 581, 585 (Bankr. N.D. Ill. 1993) ("Subject matter jurisdiction is a prerequisite to abstention."). Therefore, the Court must consider whether it has jurisdiction before it can consider whether to abstain.

"A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack.'" Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (quoting Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980)). In a facial attack, a court examines the complaint to see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, accepting all factual allegations in the complaint as true. Branson Label, Inc. v. City of Branson, 793 F.3d 910, 914–15 (8th Cir. 2015). In a factual attack, the court may examine matters outside of the pleadings, such as affidavits and testimony, to determine if subject matter jurisdiction exists as a matter of fact. Id. at 915. Unlike a facial attack, in a factual attack, the plaintiff does not enjoy the benefit of the allegations in its pleadings being accepted as true for purposes of the court's review. Id.

Lariat essentially argues that this Court does not have subject matter jurisdiction as a matter of fact under 28 U.S.C. § 1334. The plaintiff has the burden of proving that jurisdiction exists "and the existence of disputed facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Osborn, 918 F.2d at 730. "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

Under 28 U.S.C. § 1334, district courts "shall have original and exclusive jurisdiction of all cases under title 11," and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a)–(b). Pursuant to its authority under 28 U.S.C. § 157(a), the District Court of Minnesota refers cases under section 1334 to the bankruptcy court of this district. The Supreme Court has recognized "that 'Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.'" Celotex Corp. v. Edwards, 514 U.S. 300, 308, 310 (1995) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)).

A bankruptcy court can have jurisdiction after confirmation of a chapter 11 plan to hear matters. "[O]nce the reorganization plan has been confirmed . . . the estate of the debtor, and thus the bankruptcy court's jurisdiction, ceases to exist. However, a bankruptcy court may explicitly retain jurisdiction over aspects of a plan related to its administration and interpretation." Norwest Equip. Fin. v. Nath (In re D & P P'ship), 91 F.3d 1072, 1074 (8th Cir. 1996) (citation omitted); see also Fairfield Communities, Inc. v. Daleske (In re Fairfield Communities, Inc.), 142 F.3d 1093, 1095 (8th Cir. 1998). Because a bankruptcy court's jurisdiction is limited post-confirmation, the party seeking to establish post-confirmation jurisdiction must meet two requirements: (1) a close nexus to the bankruptcy case; and (2) the plan must provide for jurisdiction. In re Enerl, Inc., 558 B.R. 91, 96 (Bankr. S.D.N.Y. 2016) ("First, the matter must have a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan . . . . Second, the plan must provide for the retention of jurisdiction over the dispute." (quoting Penthouse Media Group v. Guccione (In re General Media, Inc.), 335 B.R. 66, 73–74 (Bankr. S.D.N.Y. 2005))); see also U.S. Commodity

Futures Trading Comm'n. v. NRG Energy, Inc., 457 F.3d 776, 780 (8th Cir. 2006) ("[B]ankruptcy courts are unable to expand their own jurisdiction by order."). A state court has concurrent jurisdiction to interpret a chapter 11 plan of reorganization. Finstad v. Gord (In re Finstad), 613 B.R. 180, 183–84 (B.A.P. 8th Cir. 2020). "[U]pon confirmation, a plan serves as a new contract between the debtor and the parties whose claims are addressed in the plan and state courts have jurisdiction to interpret post-confirmation contracts." Id.

Both parties agree that the plan included a retention of jurisdiction, though they disagree on whether that jurisdiction still exists in this matter. The plan of reorganization in this matter purported to retain jurisdiction "[t]o the full extent permitted under applicable law, until the Plan has been fully consummated," over proceedings involving the "interpretation and enforcement of the terms of the Plan." The jurisdictional reservation lapses in this matter, under the terms of the plan, when the case is fully consummated. To consider whether the reservation of jurisdiction has lapsed, the Court need only consider the language of the plan of reorganization and the current state of affairs of the bankruptcy case as described by the parties in the pleadings. Neither party has called upon this Court to interpret the confirmation order, nor is it necessary.

A "bankruptcy court's authority to enforce the terms of a confirmed plan . . . lapses only after the plan has been fully consummated." In re J & B Haldeman Holdings, LLC, 517 B.R. 910, 918 (Bankr. W.D. Wis. 2014). "Fully consummated" is not defined by the bankruptcy code or the plan. "Substantial consummation" has been defined by Congress as:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
> (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2). For a plan to be fully consummated something more than substantial consummation under section 1101(2) must be required. "So long as [a creditor's] treatment under the Plan remains incomplete, this Court retains its section 1142(b) authority because the Plan will not be fully consummated so long as the estate continues to be administered." In re J & B Haldeman Holdings, LLC, 517 B.R. at 920–21. Whether a plan has been fully consummated is an issue of fact. Id.

If substantial consummation occurs upon the "commencement of distribution under the plan" (11 U.S.C. § 1101(2)) then full consummation must occur when all distribution under the plan has been completed. See In re J & B Halderman Holdings, LLC, 517 B.R. at 920–21 (indicating the plan was not fully consummated if a creditor's treatment under the plan was incomplete); see also In re C & P Gray Farms, Inc., 70 B.R. 704, 711 (Bankr. W.D. Mo. 1987) (withholding discharge of corporate Chapter 11 debtor "until full consummation of the plan by the debtor" through "actually performing its plan"). It is undisputed that all payments on allowed claims required to be made under the terms of the plan have been made. Ms. Wigley's distribution to Lariat under the terms of the plan and her distribution to all other creditors under the terms of the plan is complete.

Ms. Wigley argues that the plan has not been fully consummated because the unresolved nondischargeability action will determine the amount of Lariat's disallowed portion of the claim, even though the "allowed" claim has been capped and paid under the terms of the plan. A debtor can challenge the existence of a creditor's claim or the amount of the claim under 11 U.S.C. § 502(b). If the amount of a claim is challenged, the Court will determine the "allowed" amount of a creditor's claim, either on the merits or under one of the provisions of section 502(b) which operate to limit the amount of a creditor's claim allowed against the bankruptcy estate. Ms. Wigley

challenged Lariat's claim in her bankruptcy case, arguing that Mr. Wigley's payment to Lariat through his bankruptcy extinguished Ms. Wigley's obligation or reduced Lariat's claim by the amount paid by Mr. Wigley; or, if a landlord cap applied, that Mr. Wigley's payment should be applied to the capped amount, reducing Lariat's claim to zero. In re Wigley, No. 16-43707 (Bankr. D. Minn. Apr. 18, 2017), Dkt. No. 86 at 25. The Court ultimately capped Lariat's allowed claim at $308,805.00 under 11 U.S.C. § 502(b)(6) and did not decide the remaining disallowed amount owed by Ms. Wigley to Lariat on the fraudulent transfer judgment. Ms. Wigley argues the disallowed portion of the claim is governed by the plan and it has not been fully determined. Therefore, Ms. Wigley argues, the plan is not fully consummated and the Court retains jurisdiction. Lariat argues the disallowed part of the claim is not dealt with in the plan and the plan is fully consummated, eliminating jurisdiction.

The Court rejects Ms. Wigley's arguments that the plan governs payment of the disallowed portion of the claim and the plan has not been fully consummated. In section II of the plan, under the heading "Treatment of Class 1," the plan provides, "Class 1 claims, to the extent allowed pursuant to Section 502 of the Bankruptcy Code, shall be paid in full . . . provided, however, that: . . . " (Emphasis added.) The plan then includes provisions related specifically to the allowed claim of Lariat. In this way, the language directly under the heading "Treatment of Class 1" limits the rest of the provisions for Class 1 to payment of the allowed claim, not any disallowed amount.

Under "Treatment of Class 1," paragraph 1(a) provides, "The allowed claim by the bankruptcy court by order dated February 9, 2018, shall be paid in full on the Effective Date . . . without prejudice to a claimant's right to receive additional payments on adjudication of the Disputed Amount." (Emphasis Added.) The Disputed Amount is defined as Lariat's claim as "overruled in part [(capped)] by Judge Fisher's Order dated February 9, 2018." At the time the

plan was filed, the “disputed amount” referred to Lariat’s allowed claim as “capped” by this Court and was, at the time of the confirmation order, on appeal. At that time, the allowed claim could have been: (1) the capped amount of $308,805.00; (2) zero, as argued by Ms. Wigley; or (3) the full claim as argued by Lariat. Under paragraph 1(a) at the time the plan was filed, there was the possibility that the plan would operate to allow Lariat to receive a larger sum as an allowed amount. The Eighth Circuit Court of Appeals resolved that issue, capping the allowed claim at $308,805.00. Adjudication of the disputed allowed amount is finally resolved. Paragraph 1(b) under “Treatment of Class 1” likewise only concerns “[a]ny additional amount allowed by order of the Bankruptcy Court or any appellate court” and any payment of an increase of that allowed amount or “any reduction in the amount of the allowed claim.” (Emphasis added.) Paragraphs 1(a) and 1(b) only deal with an increase or reduction of the allowed claim and in no way provide for the disallowed portion of the claim.

Reading one phrase in isolation, Ms. Wigley argues the phrase “Lariat claim” in paragraph 1(d) under “Treatment of Class 1” applies to the entire Lariat claim, allowed and disallowed. It states, “With respect to the Lariat claim, Lariat is enjoined from collection activity against the Debtor . . . .” The complete wording of paragraph 1(d) makes this interpretation untenable because paragraph 1(d) further states with respect to the Lariat claim, Lariat is enjoined from collection activity against the Debtor “unless there is a payment default to [Lariat] under this Plan.” (Emphasis added.) As discussed above, the plan limits its payment provisions in paragraphs 1(a) and 1(b) to the “allowed claim.” Thus, the injunction is tied to payment or nonpayment of the allowed claim only. The disallowed amount is not required to be paid in the plan and failure to pay the disallowed amount cannot be a default.

Contrary to Ms. Wigley's arguments, the plan does not provide a mechanism to deal with payment of the disallowed portion of Lariat's claim. Nor did this Court decide the precise amount of Lariat's damages in the nondischargeability adversary proceeding. Rather, the Court entered a judgment that the state court judgment was nondischargeable. Lariat Cos. v. Wigley (In re Wigley), Adv. No. 17-04124 (Bankr. D. Minn. Sept. 20, 2018), Dkt. No. 78 (the judgment of nondischargeability); Dkt No. 86 at 80 ("Lariat's Complaint seeks a judgment of non-dischargeability, not a money judgment.. . . . Both are permitted, but in this case what was sought was, in essence, a declaration of non-dischargeability. As I explained in the claim objection order, the state court appears to be the proper forum for [the amount of damages] issue." (Record citations omitted)).

Therefore, only the allowed portion of the claim is dealt with in the plan when taking the entirety of Treatment of Class 1 into account. There can be no default regarding the disallowed portion of the claim, as the plan does not require disallowed amounts to be paid. See Michaels Stores, Inc. v. Sun Life Assurance Co. of Canada, 413 F. Supp. 3d 854, 857 (D. Minn. 2019) ("Under Minnesota law, contract provisions are not to be read in isolation, but instead in light of their surrounding context."); Employers Mut. Liab. Ins. Co. of Wis. v. Eagles Lodge of Hallock, Minn., 165 N.W.2d 554, 556 (Minn. 1969) (stating contract terms should not be construed to lead to an absurd result). Since there can be no default for not paying the disallowed (non-discharged) portion of the claim, the injunction in the plan and requested relief in counts one and two cannot apply.

In sum, since the plan provides no mechanism to deal with disallowed portion of the claim, there remains nothing to be done under the plan regarding Lariat's claim. The plan has been fully consummated and, as a result, the Court is without jurisdiction to decide this adversary

proceeding.[1] The Court does not need to decide if theoretically the plan could have extended jurisdiction to include the non-discharged disallowed portion of the claim.[2]

**II. Abstention**

Having concluded that the Court lacks jurisdiction to decide this adversary proceeding, the Court need not consider whether to abstain from this proceeding. In any event, as Ms. Wigley now agrees mandatory abstention would be required under section 1334(c)(2), no analysis is necessary. If this Court had subject matter jurisdiction, it would abstain pursuant to the agreement of the parties. The Court also need not discuss permissive abstention under 28 U.S.C. § 1334(c)(1) but would have abstained under permissive abstention as it overwhelmingly applies in this case.[3]

**CONCLUSION**

The Court lacks subject matter jurisdiction to interpret the plan or mandatorily abstain as now requested by Ms. Wigley because, pursuant to the terms of the plan, the Court only maintained jurisdiction to interpret or enforce plan terms until it has been fully consummated. The Court

[1] For the same reason, the Court has no jurisdiction to determine the interest rate (as the plan rate of five percent specifically only applies to the allowed claim) and application of payments from the Wigleys to the disallowed non-discharged portion of the claim. With regard to the interest rate, the plan specifically provides, "Class 1 claims, to the extent allowed pursuant to Section 502 of the Bankruptcy Code, shall be paid in full, with post-petition interest calculated at the rate of five percent (5.0%) per annum, on the Effective Date." (Emphasis added.)

[2] Although not dealing specifically with jurisdiction, "most courts interpreting section 1141 have concluded that a chapter 11 plan does not have a binding effect with respect to nondischargeable debts of an individual debtor." Dolven v. Bartleson (In re Bartleson), 253 B.R. 75, 80 (B.A.P. 9th Cir. 2000). "Although 'a confirmed plan generally binds any creditor regardless of whether the creditor's claim is impaired by the plan or whether the creditor accepted the plan,' the same is not true of a creditor whose claim is nondischargeable." See DePaolo v. United States (In re DePaolo), 45 F.3d 373, 375 (10th Cir. 1995) (internal citation omitted). But see In re Mercado, 124 B.R. 799, 803 (Bankr. C.D. Cal. 1991) (interpreting 11 U.S.C. § 1141(d)(2) to subject a nondischargeable debt to provisions of the confirmed plan).

[3] In view of Ms. Wigley's consent to dismissal, there also is no need to discuss Lariat's alternative motion under Fed. R. Civ. P. 12(b)(6). That is now a decision for the state court as the parties now agree—for different reasons.

concludes that the plan has been fully consummated as all allowed claims have been paid and the plan does not provide for payment (or liquidation) of the disallowed portion of Lariat's claim. Jurisdiction has lapsed.

Normally, if both parties agree to dismissal (as in this case) the reason for dismissal is irrelevant. In fact, had there been a generic stipulation of dismissal, the Court would have simply dismissed the case. But, in this case, Ms. Wigley only consented to mandatory abstention. Because abstention requires subject matter jurisdiction, by abstaining this Court would implicitly agree that it has jurisdiction when it does not. It cannot do so. If the Court has no jurisdiction it cannot take actions that require jurisdiction.

**ORDER**

IT IS HEREBY ORDERED:

The Complaint is dismissed for lack of subject matter jurisdiction.

DATED: *December 30, 2020*

/e/ William J. Fisher

William J. Fisher
United States Bankruptcy Judge